## THE WASHINGTON LIFE INSURANCE COMPANY *vs.* HANNAH M. LAWRENCE and MAGGIE RICHMOND.

In the year 1861 D. L. Jr. effected an insurance on his life, with the plaintiff, for $5000. In November, 1862, being under a promise of marriage to M. R. he assigned the policy to her, and notified the plaintiffs thereof, and the policy was marked on the books of the company as assigned to her. In 1863, the insured, not having the money to continue the payments of premiums, his uncle, D. L. promised to keep the policy paid up if it was for the benefit of the insured's mother and sisters, otherwise not. The insured promised to send D. L. the policy immediately. He soon after applied to M. R. who had the policy, to send it to him, as he had heard it had expired. She did so send it, and the insured sent it to D. L. In April, 1864, he made an attempt to have the policy put in his mother's name on the plaintiffs' books, and being told that M. R. must reassign it to him, or to his mother, he applied to M. R. for an assignment of the policy in order to renew it, saying it had expired. She thereupon executed an assignment to him, without asking why he wished it; saying she "had confidence in him and gave him her signature."

*Held* that upon these facts there was no fraud or deception practiced by the insured, in procuring the assignment of the policy from M. R. and that the judge was justified in so finding.

THIS action was brought to compel the defendants to interplead concerning the moneys payable under a policy of life insurance issued to Daniel H. Lawrence, Jr. the several defendants having commenced each her separate action agaist the company, claiming said moneys. The policy referred to was issued by said company and dated January 25, 1861, and is numbered 347. Judgment of interpleader was rendered, and issues having been framed, the same were tried by consent of parties, at a special term, before Justice CLERKE, without a jury; who found and decided as questions of fact, that on the 25th day of January, 1861, the plaintiffs made and executed a policy of insurauce upon the life of Daniel H. Lawrence, Jr. known as number 347, by which they assured to him the sum of $5000 for the term of his natural life; and that the said policy was obtained by Daniel H. Lawrence, on an understanding with, and promise to her that the same should be held for the benefit of Hannah M. Lawrence, who was the mother of Daniel H. Lawrence, deceased. That on procuring such policy, he gave and delivered the same to his mother, Hannah M. Lawrence, who received and accepted the same from him as a gift, and provision for her use and support in case of death. That she, the said Hannah M. Lawrence, continued to hold and possess said policy, until the summer of 1862, when she requested the said Daniel H. Lawrence, Jr. to take such policy and deposit the same in the safe in the store of his uncle, Daniel H. Lawrence, who was a member of the firm of Lawrence, Griggs & Kingsbury, to be safely kept for her. That Daniel H. Lawrence, Jr. was at that time in the employ of said firm, where the policy was so deposited, and became afterwards interested in the business of such firm, and had access to such safe; that the policy was deposited in said safe, and remained there until the month of November, 1862, and that about the 28th day of that month, without the knowledge or consent of the said Hannah M.

Lawrence, the said Daniel H. Lawrence, Jr. took such policy and delivered the same to the defendant Maggie Richmond, with an assignment in writing, of which the annexed paper marked schedule A, was a copy, of which notice was given to the plaintiffs, and that the policy so remained in the possession of said Maggie Richmond, until on or about February, in the year 1864, when she sent the same by mail to the said Daniel H. Lawrence, Jr. to Winona, in the state of Minnesota, where the said Daniel H. Lawrence was then staying for his health. After the policy was so sent, the defendant, Hannah M. Lawrence, who was also at Winona, taking care of the assured, had the same in her possession a short time, when it was forwarded to Daniel H. Lawrence, at New York. That Daniel H. Lawrence, who is the brother of Hannah M. Lawrence, before the policy was sent, wrote to Daniel H. Lawrence, Jr. that if the policy was for the benefit of his mother and sister, he, Daniel H. Lawrence, would pay the premiums, thereon, and not otherwise. That he was assured that it was to be held for their benefit, and that thereupon he paid the premiums, in January, 1864, and April 1864; that the assignment to Maggie Richmond was detached from the policy before sending the same to Daniel H. Lawrence, in New York, by the assured, and was found in his pocket book after his death, and that neither the said Daniel H. Lawrence, or the said Hannah M. Lawrence had any notice or knowledge of any assignment. That Daniel H. Lawrence, Jr. the assured, wrote to a friend of his to have the policy transferred on the books of the company, to his mother, Hannah M. Lawrence, and was informed that it could not be done unless Maggie Richmond re-assigned the policy to the assured or else assigned to said Hannah M. Lawrence. That after the policy was sent to Daniel H. Lawrence, in New York, he advanced on the credit thereof, to the said Daniel H. Lawrence, Jr. and to his mother, at his request, $600 or

$700, besides the payment of the premiums. That on the return of Daniel H. Lawrence, Jr. to New York, in feeble health, he called on Maggie Richmond for an assignment to him of the policy, which she executed to him, of which she also signed a written notice to the company. And that on the 28th day of May, 1864, Daniel H. Lawrence, Jr. executed the assignment of the policy to Daniel H. Lawrence, a copy of which was annexed. That Daniel H. Lawrence asked him whose name should be put in as assignee, whether the name of his mother or Daniel H. Lawrence, and that he concluded to have the latter inserted. That there was an understanding between Hannah M. Lawrence and Daniel H. Lawrence, the elder, that the mother the of deceased should have the benefit of the policy after repayment to Daniel H. Lawrence of his advances. That Daniel H. Lawrence, Jr. died on the 15th day of June, 1864, at Morristown, in the state of New Jersey ; and the company have paid into court the amount insured in said policy, less the costs allowed to them in this action; that all the claims arising on or under such policy, were assigned by Daniel H. Lawrence to Hannah M. Lawrence, on the 8th day of October, 1864. The justice found, as a conclusion of law on the foregoing facts, that in equity and of right, the fund in court in this action, and which was paid upon said policy, belongs to the said Hannah M. Lawrence, and that she is entitled to the same. And he further found, that the said Hannah M. Lawrence was entitled to recover of the said Maggie Richmond, her costs and expenses in this action, to be adjusted.

Judgment being entered accordingly, the defendant, Maggie Richmond, appealed to the general term.

*Wm. Fullerton,* for the appellant. The policy of insurance issued by the plaintiff to Daniel H. Lawrence, Jr. and bearing date January 25, 1861, was a contract to pay a certain sum of money upon the happening, at some

uncertain time in the future, of a possible contingency (of death under circumstances other than such as are therein excepted) and upon condition of performance and observance of the terms, conditions and provisions of such contract therein expressed.

II. The assignment by Daniel H. Lawrence, Jr. to the defendant Richmond was a valid and effectual assignment of the contract or policy in question ; and the title to, and all his interest, claim and demand in or under the same, *passed* to and *vested* in the said defendant absolutely. (*St. John vs. American Mutual Life Ins. Co.* 13 *N. Y. Rep.* 31.) 1. The same was in writing, duly executed and for a *valuable consideration expressed* in the instrument of assignment. 2. The instrument of assignment, together with the contract therein referred to annexed, was delivered by said assignor to the defendant. 3. The conditions of the contract, applicable to assignments, was in all respects complied with by notice to the company thereof, and their assent thereto.

III. The express acknowledgment and declaration by the assignor, in the instrument of assignment, that value was received therefor, is in itself proof of a valuable consideration, and no affirmative evidence *aliunde*, of consideration is requisite. Moreover, said assignor, and all claiming under him, are thereby *estopped* from denying his own act or such consideration, and the same cannot be inquired into or questioned. No fraud or mistake is alleged or proved, and there is in the case affirmative evidence, *aliunde*, of a valuable consideration sufficient of itself to support said assignment. 1. A promise of marriage is clearly proved. The letters of the deceased to the defendant Richmond, contain evidence of a mutual promise of marriage, and the language and expressions used are as clear and strong as language can well convey, and conclusive on this point, and also that the time for solemnization of the marriage had been fixed by the parties, and

that the same was to be solemnized on his return home, not later than 1st October, 1863. The fact of mutual promises and agreements to marry is conclusively proved, and existed prior to date of ex. No. 5. These constitute a contract for breach of which not only are damages recoverable at law, but such promise constitutes in law a valuable consideration for a deed or instrument of conveyance or transfer. Pecuniary damages being recoverable for a breach, is the test that the "promise" (of marriage) is valuable. (*Jones* v. *Ashburnham,* 4 *East,* 455. *Lent* v. *Padelfora,* 10 *Mass. R.* 236. *Seaman* v. *Seaman,* 12 *Wend.* 381. *Morton* v. *Brown,* 2 *Neville & Perry,* 297. 2 *Adolph. & Ellis, n.* 5, 859.) 2. Even a mere voluntary conveyance would be upheld in equity against subsequent grantees taking under circumstances which accompany and surround the assignment by deceased to his uncle, and by the latter to the defendant Lawrence. The transaction being a fraud as against the defendant Richmond, practiced by deceased, and concerning which, if the uncle and the defendant Lawrence had not actual notice, they had legal constructive notice, and were put on inquiry, and were bound to exercise diligence and to inquire, and took without consideration. (*Cathcart* v. *Robinson,* 5 *Peters, U. S.* 280. *Jackson* v. *Town,* 4 *Cowen,* 603, 604.)

IV. Said contract and assignment remained in actual possession and custody, and control of the defendant Richmond, until February, 1864, and was held by her, (as she is still entitled to hold the same,) as the absolute and only owner thereof.

V. The possession or custody of said contract and policy was obtained by Daniel H. Lawrence, Jr. from the defendant Richmond, by means of false and fraudulent representations made, and deceit practiced by him, and with intent and design to cheat and defraud said defendant Richmond; and no title passed thereby.

VI. The signature of the defendant Richmond to the

alleged assignment by her, and to the notice, was procured by said Daniel H. Lawrence, Jr. by means of false and fraudulent representations made, and deceit practiced by him; and, with intent and design to cheat and defraud said defendant Richmond. And no title or interest in said contract passed thereby.

VII. No title to or interest in said contract passed by the alleged assignment thereof by said Daniel H. Lawrence, Jr. to his uncle; nor by the alleged assignment of the claim in action herein by his uncle to the defendant Lawrence. An assignor cannot convey any greater or better title than he himself has; and an assignee takes subject to any and all claims and defenses existing against his assignor. (*Westfall* v. *Jones*, 23 *Barb.* 9. *L'Amoureux* v. *Vandenburgh*, 7 *Paige*, 316.) Fraud vitiates the contract, as to the assignees, to same extent as to the assignor, and no title can be acquired through fraud. No valuable consideration was paid or parted with to said Daniel H. Lawrence, Jr. for such alleged assignment by him to his uncle; nor to said uncle for the alleged assignment by him to the defendant Lawrence. The first is avowed by the uncle to have been so assigned as a " mere matter of convenience ;" and the latter paper, it is in effect conceded, was made without any actual consideration. It is not pretended that any purchase of the policy was made or contemplated; nor is it even pretended that any money was paid by way of consideration or price of such policy or contract. On the contrary, the language used by the witness himself describes a transaction of an entirely different character, a loan or " advance " on " collateral." He not only says the assignment was made to him as a mere matter of " convenience," but also that he had " advanced " on the " strength of getting the policy," and on the understanding that it was " for the benefit of the mother and sisters of deceased ;" all which is wholly inconsistent with any idea of " purchase." The instrument was not negotiable,

and he not only took it subject to all claims and defenses maintainable against his assignor, but was bound to the exercise of diligence and inquiry concerning the title and right thereto. (*Commercial Bank* v. *Colt*, 15 *Barb.* 506. *Evans* v. *Ellis*, 5 *Denio*, 640. *Murray* v. *Lylburn*, 2 *John. Ch.* 441.) He had constructive legal notice, if not actual notice, of the rights and title of the defendant Richmond in and to said policy or contract, and was put upon inquiry concerning the same. 1. His own testimony, to the effect that he had written to deceased that "if the policy" was for the benefit of his mother or sister, he (the witness) would pay the premium, and not otherwise, indicates the existence of either knowledge or information, or suspicion that it was otherwise. 2. On the face of the policy appeared prominently the clause requiring notice of any assignment thereof to be given to the company, and the same is made a condition of the contract. Therefore if any existed he knew it could there be ascertained, and was bound to inquire.

VIII. The court erred in finding as facts that the policy in question was taken out for the benefit of the defendant, and in each and every of the findings of facts excepted to.

IX. The court erred in the conclusion of law that the fund in court belonged to the defendant Lawrence, and that she was entitled to the same, and also in that the court adjudged that the defendant Lawrence should recover costs, &c.

*W. F. Allen* and *H. Brewster*, for the respondent H. M. Lawrence. I. The title and property in the policy was, from its first issue, in Hannah M. Lawrence, and her title has never been relinquished or divested. It was obtained for her benefit and with the sole intent to devote it to her use, and in accomplishment and execution of this intent, it was formally given to her and put in her actual possession. It was actually delivered to her, and remained

in her possession for years. It was an executed gift, which could not be revoked by the donor without the consent of the donee. The consideration, (love and affection for a mother, partially dependent upon the donor,) was sufficient to support the gift, if any consideration were necessary as between donor and donee, which we suppose was not. Like any other chose in action, it was transferrable by delivery without a formal assignment. · From the time of the delivery, the transferrer became, and his executors after his death would have become the trustees of the donee. The formal assignment to Daniel H. Lawrence, and by him to the plaintiff, added nothing to the validity or equity of the plaintiffs' claim in this view of the case. They simply operated to place the legal and formal ownership in the person having the actual and equitable title.

II. This title of Mrs. Lawrence was never divested or relinquished. It could not be divested without her act and assent, or by act and operation of law. She delivered the policy to the insured for a special purpose, but never parted with the title, and the possession of Daniel H. Lawrence, Jr. for this special purpose, was her possession, he holding it as her agent. It needs no argument to prove that Daniel H. Lawrence, Jr. acquired by that act of Mrs. Lawrence no rights or interests in the policy as against her. Every payment of the quarterly premiums was for her benefit, and a keeping alive of the policy for her benefit. Had he not paid, she might and would have done so. Had he or his representatives asserted a claim to the policy as against her, they would not have succeeded. ·

III. It follows that Daniel H. Lawrence, Jr. having as against Hannah M. Lawrence no title or claim to the policy at law or in equity, could transfer no title or claim to any other person, no matter what the relations were between them, or the considerations moving from one to the other. The assignee of a chose in action, even upon a

full and valuable consideration, takes subject to all the equities existing against the transferrer in behalf of any other person. But here there was no valuable consideration for the transfer. It was voluntary, the assignee parting with no value and coming under no engagement as a consideration for it. It necessarily follows that she merely took title of Daniel H. Lawrence, Jr. whatever that was, and as against the respondent it was just nothing at all and of no value. Here the case on the part of the respondent might safely rest, but the defendant Richmond is in no better situation upon the claim and title alleged by her.

IV. Conceding that Daniel H. Lawrence, Jr. became so possessed of the policy by the delivery of the same to him by the respondent, that he could by gift transfer a good title thereto to the defendant Richmond, and that he did so, and the policy became hers as the voluntary donee thereof, she lost her title when, by her voluntary act and consent, she relinquished her title, 1st, by a surrender of the policy to Daniel H. Lawrence Jr. and 2d, by a formal assignment to him. The inducement to her acts is not material. She was not a holder for value, and intended to, and did release her claim. If the respondent, by a special delivery, without intending to part with the title, could lose her interest in the policy, which the appellant must assert and maintain before she can show even a color of title, much more did she lose her title when she parted with the possession, intending to and actually parting with her title.

V. Concede further that which cannot be established, that she could have reclaimed the policy and compel a re-affirmance of a gift which had been revoked with the assent of the donee, so long as the policy remained in the hands of Daniel H. Lawrence, Jr. or subject to his control, the same right does not exist as against the respondent. 1. The trust for her benefit could and did revive the interest the moment the title thereto was formally and

nominally re-invested in Daniel H. Lawrence, Jr. 2. Daniel H. Lawrence became the assignee then for the benefit of the respondent for a valuable consideration. He paid the renewal premiums, without the payment of which the policy would have terminated, solely for and in consideration of the policy being held for the use of the respondent. 3. He advanced other sums upon the faith of the policy as a valid security in his hands.

The pretense of fraud in procuring the re-assignment by the defendant of the policy to Daniel H. Lawrence, Jr. is absurd. No one for a moment believes the defendant, her politic mother, or her shrewd uncle, all present, could have been made to believe that a policy already ended would be renewed, or a new policy issued upon the life of a man with one foot in the grave, and who could not live to see another quarter day. And fraud or false pretenses is only to be alleged in favor of a right founded on value.

VI. That the money loaned to deceased, for which he gave his note, had any connection with this policy, was never claimed, and the assignment of the policy to Maggie Richmond was in November, 1862, and the note transaction was in 1863 or 1864. Hence, if she gave the policy back for nothing, it left her just where she was before. The deceased loved her, but had received nothing but affection in return. She has a mother and friends. The respondent is a widow, and had nursed the deceased from infancy, and again when sick, had nurtured and cared for him. Can there be any doubt as to which has the better equity?

VII. The exceptions are none of them well taken.

*By the Court,* G. G. BARNARD, J. I am unable to concur with the learned judge, who tried this action, in his finding that on procuring the policy in question, Daniel H. Lawrence, Jr. gave and delivered the same to his

mother as a gift and provision for her use and support in case of his death. The defendant, Mrs. Lawrence, does not claim such a title in her pleadings, but claims solely under the assignment from Daniel H. Lawrence, the uncle of the insured. The only evidence of the gift to the mother is her own testimony, and is simply that this policy was delivered to her by her son, the insured, within a few days after it was taken out, as a policy made for her benefit. That she kept it about a year and delivered it to her son to be placed for safe keeping in the safe in his uncle's store. The insured was childless and unmarried, and had no father.

It is more reasonable to infer from his testimony that the policy was delivered to his mother as the person who would recover the money upon it after his death, under the statute of distributions, than upon such uncertain language to find a present transfer of the title to the policy itself. In this view of the case, it is not necessary to examine the force of the objection to the admissibility of her testimony. It fails to prove the fact which it was admitted to prove, and is therefore harmless. No other error is alleged to have happened upon the trial, in admitting or rejecting evidence, and the case must be determined irrespective of the gift to the mother, so found at special term. The facts are few and mainly undisputed. The one decisive fact is in dispute. In the year 1861, Daniel H. Lawrence, Jr. effected the policy with the plaintiff for $5000. In November, 1862, he was under a promise with the defendant Maggie Richmond to marry her. On the 28th of November, 1862, he assigned the policy to her, of which notice was given soon thereafter to the plaintiffs' company, and the policy was marked as assigned to her, upon the books of the company. In the latter part of 1863 the insured had not the money to continue the quarterly payments of premium, and his uncle, Daniel H. Lawrence, promised to keep the policy paid up if it was for the benefit

of his mother and sisters; otherwise not. That the insured promised to send his uncle the policy immediately. That soon thereafter he applied to the defendant Richmond, who had the policy, to send it to him as he had heard it had expired. She did so, and upon its receipt by Daniel H. Lawrence, Jr. he sent it to his uncle. In April, 1864, the insured made an attempt to have the policy put in his mother's name on the insurance company's books, and was told that Miss Richmond must re-assign it to him or to his mother. On the 28th of May, 1864, she re-assigned the same to him. The disputed question is, whether this assignment was procured by fraud or deceit. The court has not found that any fraud was practiced to procure the same. I think it was justified in so finding. Two witnesses are called, both of whom testify that the insured said to Miss Richmond that the policy had expired, and asked her for an assignment in order to renew it. One of these witnesses is the young lady's mother. She testifies in another portion of her testimony that her daughter "gave him her signature without asking why he wished it ; she said she had confidence in him and gave him her signature." If this was true there was no fraud or deception. The judge has so found. It is not the province of an appellate court to review the decision, upon appeal, where the evidence is conflicting. The defendant Lawrence, makes a title to the policy, beyond dispute, if the assignment from Miss Richmond was voluntary and not obtained by fraud. The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, January 4, 1869. *Clerke, Sutherland* and *George G. Barnard,* Justices.]